746 So.2d 498 (1999)
FRENZ ENTERPRISES, INC., Appellant,
v.
PORT EVERGLADES, a Department of Broward County, and Broward County, Florida, Appellees.
No. 98-4252.
District Court of Appeal of Florida, Fourth District.
November 24, 1999.
*500 Dante Mattioni and Stephen M. Martin of Mattioni, Ltd., Philadelphia, Pennsylvania, and Garland Hogan, Lazy Lake, for appellant.
Edward A. Dion and Tamara M. Scrudders, Fort Lauderdale, for appellees.
POLEN, J.
Frenz Enterprises, Inc., (Frenz) appeals a final judgment awarding it $32,662.86 on its claim against Port Everglades and Broward County (the Port) seeking compensation for its dredging of Slip 3 in the Port. Frenz presents nine issues on appeal, alleging error in the trial court's grant of a directed verdict in favor of the Port on several counts, its failure to conform the pleadings to the evidence, its limitation of recovery, its refusal to instruct the jury on lost profits, and its denial of Frenz's motion for directed verdict as to the Port's counterclaim. We find no error and affirm.

THE CONTRACT
Frenz was the successful bidder on a project to dredge 7,000 cubic yards of "unclassified" material from Slip 3 in the Port to a distance of38 ft. Mean Low Water (MLW). The Port's Instructions to Bidders required each bidder to visit the site to become acquainted with the existing conditions, and then to acknowledge that the bidder was satisfied as to the nature and location of the work. According to the instructions, a contractor's failure to become acquainted with all available information concerning these conditions would not relieve the contractor from responsibility for properly estimating the difficulty or cost of performing the work. Frenz submitted a signed statement with its bid, in *501 which it acknowledged it had examined the site of the work and informed itself fully of all conditions pertaining to the place where the work was to be completed.
As the successful bidder, Frenz executed a contract with the Port containing a provision that described the material to be dredged was "unclassified," and stated the material "vari[ed] as to depth, formation and hardness." The work included removal of material "of whatever kind encountered, including anything lost or sunk or any debris not otherwise listed or classified." The contract included pre-inspection clauses that placed the burden on the contractor "to examine the site and make such tests and borings and decide for himself the character of the material and difficulties which may be encountered in dredging." By executing the contract, Frenz acknowledged it was satisfied regarding the nature and extent of the work and had correlated its study and observations of the site with the requirements of the contract documents. According to the contract, failure to properly evaluate any cost factors prior to bidding would not form the basis for additional compensation.
The contract provided the parties understood the quantities proposed on the Schedule of Prices were estimates for the purpose of bid comparison, and the contractor was to be compensated based on actual quantities of work performed as measured by the Port's engineer. The Port would conduct an initial survey at the start of the project and a final survey on completion of the dredging. The contractor was free to accompany the survey crew during both surveys and/or perform its own surveys.[1] The total quantity of material dredged (spoil) was to be calculated by comparing the initial and final surveys. The contract also contained a clause regarding "claims for extra cost," which required the contractor to give the Port's engineer five days written notice of a claim that additional work was necessary.

FRENZ'S COMPLAINT
Frenz ultimately sued the Port alleging four breach of contract counts regarding the Port's failure to: I) pay for 122.5 hours of lay time (down time), removal of fourteen tires, and 7900 cu. yds. of dredging; II) pay for dredging at the lip of Slip 3; III) pay for dredging of rock allegedly unanticipated by the contract; and IV) provide certification of the non-hazardous nature of the material dredged; cooperate by approving the completed job thus requiring Frenz to redredge areas where small mounds of silt began to reappear due to tugs stirring up the bottom; and abide by the contract resulting in the termination of Frenz's ability to be bonded.

THE TRIAL
At trial, Mr. Frenz testified he relied on representations the Port made to him during a pre-bid meeting regarding the condition of the soil to be dredged. The depth required of the contract was changed from -37 ft. MLW to -38 ft. MLW at the pre-bid meeting, and Mr. Frenz believed that if he dredged an extra foot, he would receive extra money. He based his bid on the Port's representation that the Slip had been dredged in 1981 to -39 ft. MLW.
Mr. Frenz testified he removed over 1,000 cu. yds. of rock from the Slip and approximately 16,000 cu. yds. of material, based on truck receipts and bills for removal. His company notified the Port it completed the project on July 24, 1994. The Port's final survey showed some high spots, and by letter dated July 25, 1994, Frenz informed the Port it thought tugs bringing ships into the slip were stirring up the bottom and moving material around. Up to July 24, Frenz had continued dredging to remove these high spots. Mr. Frenz testified his company lost its *502 bond line as a result of the Port's actions, and was unable to bid on bonded work such that Frenz stopped operating.
At the close of Frenz's case, the Port moved for a directed verdict on all Counts. During argument, the court noted the essence of Frenz's case was that it was excused from performing under the contract due to the Port's material misrepresentations made during the pre-bid meeting regarding the soil conditions. The court noted Frenz did not plead such material misrepresentations, nor did it plead waiver of the contract term requiring written notice of additional work, or estoppel. The court granted the Port's motion for directed verdict in substantial part leaving only claims seeking compensation under the terms of the written contract for removal of additional tires, removal of additional cubic yards of spoil, and additional down time.
Frenz requested the court allow it to amend its complaint to conform to the evidence, and the court denied the motion, characterizing such an amendment as "very material." The court denied Frenz's request to instruct the jury on lost profits, which it found were not foreseeable at the time of contracting. It also refused a requested instruction that would have allowed the jury to calculate damages based on truck tickets for material removed, rather than the method prescribed by the contract of comparing the initial and final surveys.
The jury returned a verdict finding the Port breached its contract with Frenz and awarding Frenz $18,562.86 for dredged material, $18,300 for additional lay time, and $1,600 for removal of additional tires. The jury also found in favor of the Port on its counterclaim for liquidated damages and awarded Broward County $5,800.

DIRECTED VERDICTS
Frenz's first Point on appeal alleges error in the court' grant of a directed verdict on Count II. When an appellate court reviews the grant of a directed verdict, it must view the evidence and all inferences of fact in a light most favorable to the nonmoving party, and can affirm a directed verdict only where no proper view of the evidence could sustain a verdict in favor of the nonmoving party. See Orsi v. All American Termite & Pest Control, Inc., 700 So.2d 425, 426 (Fla. 2d DCA 1997).
In Count II, Frenz alleged breach of contract based on the Port's failure to pay for additional work including dredging at the lip of Slip 3. However, the parties' contract required Frenz to provide five days written notice of a claim for additional work, which Frenz did not do.[2] Despite its failure to provide the required notice, Frenz argues the court erred in directing a verdict on Count II because it adequately alleged the Port waived the required five day written notice requirement because of its misrepresentation and fraud. Frenz argues it pled misrepresentation with particularity in its complaint, relying on the use in its complaint of the terms "maintenance dredging of silt" which it argues implied dredging of only silt, and "removal of rocks." It argues the Port was on notice of a potential misrepresentation claim because fraud was mentioned in the Port's affirmative defenses and the parties' pretrial stipulation referred to the issue of waiver.
We reject Frenz's contention that it adequately alleged misrepresentation. Assuming, arguendo, the Port could be held to have waived the written notice requirement by its misrepresentations, Frenz's complaint was insufficient to put the Port on notice of such a claim. A *503 claim for actionable fraud requires proof of "an intentional material misrepresentation upon which the other party relies to his detriment." Lance v. Wade, 457 So.2d 1008 (Fla.1984). Frenz's second amended complaint fails to allege these elements with any specificity.[3]
Under Point II, Frenz argues the court erred in granting a directed verdict as to Count III of its complaint under which it alleged a breach of contract based on the Port's failure to pay for the dredging of rock which was unanticipated by the contract. As noted above, to the extent this Count alleged a claim for payment for additional work, Frenz's failure to provide the required written notice precluded its recovery. To the extent this Count sought compensation for "changed conditions," the parties' contract contained no "changed conditions" clause, thus no breach of contract action would lie for changed conditions. Finally, under the clear terms of the contract, Frenz bore the responsibility "to examine the site and make such tests and borings and decide for himself the character of the material and difficulties which may be encountered in dredging." In light of this contract language, no view of the evidence could sustain a verdict in favor of Frenz on Count III and a directed verdict was properly granted.
Under its third Point, Frenz argues the following language of its July 25, 1994, letter satisfied the requirement of written notice of additional work as to dredging of rock:
Additionally, as you can see [on the enclosed pictures] the large boulders taken from the slip need to be looked at because I believe your rip rap found at the base of the seawalls is migrating.
We agree with the trial court's conclusion that this language did not constitute written notice of additional work such that Frenz could be said to have satisfied the conditions precedent to a claim for compensation for additional work.
Under Point V, Frenz argues the court erred in directing a verdict on Count IV of its complaint which sought compensation for chasing silty mounds. Frenz argues its July 25, 1994, letter constituted a written notice of extra or additional work. Our review of the record reveals Frenz made no mention of its July 25, 1994, letter to the trial court during argument on the directed verdict motions. Thus, Frenz has waived appellate consideration of this argument. See Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla. 1999).

AMENDMENT OF PLEADINGS
Under Point IV, Frenz argues the trial court erred in denying its request to amend the pleadings to conform with the evidence. In the absence of an abuse of discretion, a trial court's ruling on a motion to amend the pleadings will not be disturbed on appeal. See Life Gen. Sec. Ins. Co. v. Moral, 667 So.2d 967, 969 (Fla. 4th DCA 1996).
Florida Rule of Civil Procedure 1.190(b) allows amendment of pleadings to conform with evidence when issues not raised by the pleadings are tried by express or implied consent of the parties. The claim Frenz sought to add for misrepresentation was not tried by express or implied consent of the parties. We also agree with the trial court's conclusion Frenz's proposed amendment to add a new claim for misrepresentation constituted a material amendment such that the Port would have been prejudiced by the amendment. Where a proposed amendment would change the basic issue in the case or materially vary the originally asserted grounds for relief, rule 1.190(b) need not be liberally construed. See Odom v. Canal *504 Ins. Co., 582 So.2d 1203 (Fla. 1st DCA 1991). Therefore, we find no abuse of discretion in the trial court's denial of Frenz's request to amend the pleadings.
Under Point VI, Frenz argues the court should have allowed it to conform its pleadings to the evidence as to Count IV to allege either "bad faith or active concealment" (IB at 40). Frenz did not raise this argument below, and is precluded from raising it for the first time on appeal.

DAMAGES
Under Point VII, Frenz contends the court erred in limiting its recovery to compensation for the dredging of spoil as measured by the Port's surveys, rather than Frenz's truck receipts. We find the trial court correctly concluded that if Frenz was entitled to damages for the Port's failure to abide by the terms of the contract, there was no viable reason to calculate those damages by a method foreign to the contract.
Under Point VIII, Frenz argues the court erred in denying its jury instructions as to lost profits. This point is subject to review under the abuse of discretion standard. See Barton Protective Servs., Inc. v. Faber, 745 So.2d 968 (Fla. 4th DCA 1999). "The party defending the instructions on appeal must show that the requested instructions accurately stated the applicable law, the facts supported giving the instruction, and that the instruction was necessary in order to allow the jury to properly resolve all the issues in the case." Id. at 974.
The trial court ruled Frenz's claim seeking lost profits based on an alleged inability to obtain a bond as a result of its dealings with the Port was inappropriate because such damages were not foreseeable. We agree. To recover damages for lost profits in a breach of contract action, a party must prove a breach of contract, that the party actually sustained a loss as a proximate result of that breach, that the loss was or should have been within the reasonable contemplation of the parties, and that the loss alleged was not remote, contingent, or conjectural and the damages were reasonably certain. See Crain Automotive Group v. J & M Graphics, 427 So.2d 300, 301 (Fla. 3d DCA 1983) (reciting the elements of a claim for damages for lost profits as a result of the late placement of an advertisement).
Here, the evidence did not establish that Frenz's drop in revenues from $6,000,000 to zero was proximately caused by the Port's failure to pay Frenz the amount it expected under the contract and the Port's filing of a counterclaim seeking liquidated damages. Frenz failed to establish that such a large loss was or should have been within the reasonable contemplation of the parties, or that the Port should have known Frenz would lose his bond line. To the contrary, it would have been reasonable to expect Frenz's business to continue to some extent. Frenz has failed to establish an abuse of discretion under this point.

PORT'S COUNTERCLAIM
Finally, we reject Frenz's argument under Point IX that the court erred in denying its motion for directed verdict as to the Port's counterclaim. The trial court properly concluded a jury question remained as to whether Frenz's completion of the contract was timely under the terms of the contract.
The final judgment is affirmed.
GROSS, J., and McCARTHY, TIMOTHY P., Associate Judge, concur.
NOTES
[1] Frenz attended the initial and final surveys and made no complaint regarding the surveying methods employed.
[2] We agree with the trial court's conclusion that the contract's "no waiver" clause required the Port's waiver of the written notice requirement to be in writing. Without a written change order, the doctrine of sovereign immunity precludes recovery of the cost of extra work totally outside the terms of a contract. See County of Brevard v. Miorelli Eng'g, 703 So.2d 1049 (Fla.1997).
[3] We do not address Frenz's contention it was entitled to compensation for dredging the lip of Slip 3 based on an "emergency" clause in the contract. Frenz did not make this argument below, and thus is precluded from raising it for the first time on appeal. See Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999).